UNTIED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:09-CR-547-T-17MAP

JACQUELINE PITTS
_____/

## REPORT AND RECOMMENDATION

On the morning of her scheduled trial date, the Defendant pleaded guilty to all four counts of the indictment without the benefit of a plea agreement.  On the eve of her scheduled sentencing date, the Defendant complained about her appointed attorney and asked for a new one.  The day before her newly scheduled sentencing date, she moved to withdraw her pleas mainly contending she did not have the close assistance of counsel (doc. 187).  After the benefit of a hearing on the matter, I recommend the district judge deny the motion.[1]

*A. Standard of Review*

Pursuant to Fed.R.Crim.P. 11(d)(2)(B), a judge may permit a defendant to withdraw her guilty plea if she "can show a fair and just reason for requesting the withdrawal."  In deciding if the defendant has offered such proof, a court should evaluate the "totality of the circumstances." *United States v. Najjar,* 283 F.3d 1306, 1309 (11th Cir. 2002).  Four factors guide this analysis: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources will be conserved; and (4) whether the government would be unduly prejudiced.  *United States v. Buckles,* 843 F.2d 469, 472 (11th Cir. 1988).  In

---

[1] United States District Judge Elizabeth A. Kovachevich referred the motion to me for a report and recommendation.  28 U.S.C. § 636.

any event, the decision on the matter is committed to the court's sound discretion. *Id.* at 471.

### B. Background

#### 1. the indictment and the government's proof

The government's case against the Defendant, which is straightforward and substantial, dates back a decade. From the summer of 2000 through the spring of 2001, the Defendant drove a rental car from Michigan to Arizona on four or five occasions to deliver money to her son, Ephriam Jasper, for the purchase of kilogram quantities of cocaine. Each time she returned to Michigan with the contraband. In April 2001, DEA agents in Arizona seized $365,832 from the Defendant after she had traveled in a rental car from Michigan to Arizona. She cooperated and a year later pleaded guilty in the Eastern District of Michigan to an information charging her with unlawful use of a communication facility. *See* doc. 93 at ¶¶ 2-3 and doc. 25.

The events occurring in this district are similar to those in Arizona ten years ago – the Defendant's delivery of cash to her son so that he could buy kilogram quantities of cocaine that she could return to Detroit. In brief, the government contends the Defendant and her coconspirators were involved in a reverse sting precipitated by telephone calls and meetings between the Defendant's son and undercover operatives. The plan was that the conspirators would buy two kilograms of cocaine in a shopping mall parking lot. According to the government, surveilling agents spotted the Defendant and another individual (Defendant Woodward), both riding in a rental car, meet with two others (Defendants Jasper and King) at a local gas station. There, Jasper and King removed a bag of money from the trunk of the Defendant's automobile. Soon thereafter, agents arrested Jasper and King at the mall attempting to purchase the drugs from agents. Agents also arrested Woodward and the Defendant as they

attempted drive away from the scene. In the Defendant's car, agents discovered a loaded Ruger .45 handgun (found under Woodward's thigh), a .38 caliber revolver (located under a towel on top of the console between Woodward and Pitts), and a derringer (in a bag the government contends belonged to the Defendant). Searching agents also found a bulletproof vest inside a seat cushion and about fifty rounds of loose ammunition. The government maintains that the Defendant and Woodward transported the "buy money," namely the $46,459 seized in the aborted transaction, as well as the firearms and ammunition, from Michigan to Tampa. *See* doc. 93 at ¶¶ 4-9; doc. 204 at pp. 37-46.

The indictment tracks these events, accusing the Defendant of participating in a drug conspiracy aimed at possessing 500 or more grams of cocaine with intent to distribute (count one; 18 U.S.C. § 846); the attempted possession of that quantity with the like intention (count two; 18 U.S.C. § 846); the carrying of firearms in relation to the drug trafficking crimes charged in the first two counts (count three; 18 U.S.C. § 924(c)); and the possession of a firearm by a convicted felon (count four; 18 U.S.C. § 922(g)(1)). Notably for the Defendant, the government also filed an information under 21 U.S.C. § 851 seeking to enhance any sentence she received if convicted.[2] In short, the Defendant faced a substantial mandatory sentence.

  2. *course of the proceedings*

---

[2] Per 21 U.S.C. § 841(b)(1)(B)(ii), which is the applicable penalty provision for counts one and two, the Defendant faces minimum-mandatory sentence of ten years if she has a prior conviction for a "felony drug offense." A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." *See* 21 U.S.C. § 802(44). Although the Eleventh Circuit has not addressed the issue of whether a conviction for use of a communication facility (21 U.S.C. § 843(b)) qualifies as a "felony drug offense" for sentencing enhancement purposes, the Fifth Circuit has held that it does. *See United States v. Mankins,* 135 F.3d 946 (5th Cir. 1998).

On the morning of her scheduled trial (April 5, 2010), the Defendant handed her appointed counsel, Frederick Carrington, a note informing him that she wanted to plead guilty to the charges in the indictment without the benefit of a plea agreement (or "open," as she put it). *See* doc. 204 at p. 3. Carrington so informed the district judge who, following Fed. R. Crim. P. 11(b)'s requirements, carefully addressed the Defendant and questioned her under oath. The Defendant stated she understood the nature of the charged offenses, their elements, and their penalties. And she said that she understood that by pleading guilty she would be foregoing a trial and all its associated rights. Finally, she acknowledged that her attorney had fully and completely discussed the case with her, had advised her of her constitutional rights and possible defenses, and knew what he was doing. In short, the Defendant specifically affirmed that she was satisfied with his representation of her. Accordingly, and in view of the government's proffered factual basis, the Court accepted the Defendant's pleas and adjudged her guilty of counts one through four (doc. 204, pp. 3-46). The Court set June 28 as the sentencing date.[3]

Two weeks before the sentencing date, and after Carrington and a consulting former United States Probation Officer had reviewed the presentence report with the Defendant, the Defendant wrote a letter to the district judge complaining about Carrington's performance. The district judge referred the matter to me, and I convened a hearing. The Defendant reiterated at the hearing that her relationship with Carrington had deteriorated and they could not effectively communicate (or as she put it, there were "bad communications" between the two). Giving the Defendant the benefit of the doubt, I granted her request that she have new counsel and appointed

---

[3] Two of the Defendants, including the Defendant's son, had already entered pleas of guilty by April 5. Only the Defendant Woodward went to trial (immediately after the Defendant entered her plea).

4

her current counsel to represent her (doc. 165). The district judge rescheduled the sentencing for August 20 (doc. 177).

The day before the sentencing date, the Defendant filed the instant motion to withdraw her guilty pleas. In the main she alleges she did not have "the close assistance of counsel," her relationship with Carrington "was unsound," her pleas of guilty "were not knowing and voluntary," and her decision to plead guilty was hastily made (doc. 187). She repeated these claims at the evidentiary hearing on the motion before me.

*C. Discussion*

In short, what the Defendant is really complaining about is her unenviable position – one that became more real when her former counsel and the consulting sentencing specialist reviewed the presentence report with her. Her timing and her responses to the district judge's questions during the plea colloquy make her claims suspect. *Najjar, supra* (a court should evaluate the "totality of the circumstances" when considering a motion to withdraw a plea).

The Eleventh Circuit has repeatedly instructed district judges to consider the timing of a defendant's request to withdraw a guilty plea. For example, a defendant's "swift change of heart" implies she hastily decided to plead guilty. A lengthy delay between the plea and the request suggests something more – a calculated effort to improve one's position. *See United States v. Rogers,* 848 F.2d 166, 168-169 (11th Cir. 1988); *United States v. Gonzalez-Mercado,* 808 F.2d 796, 801 (11th Cir. 1987). The Defendant's decision to withdraw her plea on the eve of her scheduled sentencing date cannot be viewed as a sudden change of heart.

The Defendant's belated complaints about her former counsel and their poor relationship are countered by her responses during the Court's Rule 11 inquiry. When asked by the Court

about her counsel, she affirmed that Carrington "ha[d] fully and completely discussed th[e] case with [her]," "[had] been over it with [her] extensively," "ha[d] advised [her] of [her] constitutional rights and [her] possible defenses," that she was satisfied with his representation, and that he knew what he was doing. *See* doc. 204 at p. 41.[4] There is a strong presumption that these answers, made under oath, are true. *Gonzalez-Mercado,* 808 F.2d at 800 n.8. Accordingly, I find she had the close assistance of counsel.[5]

I also find that her decision to plead guilty was knowingly and voluntarily made and not a hasty one as she now alleges. This was not the Defendant's first time in a federal court; she had pleaded guilty eight years before to an information involving similar conduct and had been sentenced to the penitentiary. Her current assertion that she did not understand that she faced a minimum-mandatory, fifteen-year sentence (the ten-year, minimum-mandatory sentence required

---

[4] I am cognizant of the fact that the Defendant, per my direction, was examined on March 24, 2010, by a psychiatrist to determine her competency to stand trial. *See* 18 U.S.C. § 4241(a) and my order at doc. 71. The psychiatrist concluded she was competent, a fact stipulated to by the parties after reviewing the report (doc. 77); nonetheless, he opined that she "performs just *marginally* at that level" and that the "speed of the proceedings" might have to be "slowed down for her." *See* doc. S-1 at p. 6 (emphasis in original). Having questioned the Defendant and watched her intently at two separate hearings, I take issue with the psychiatrist's assessment. The Defendant answered the questions asked and followed those proceedings appropriately. Likewise, when the district judge asked the Defendant open-ended questions during the Rule 11 inquiry, the Defendant suitably answered those questions. Put simply, she did not perform "marginally" at any of these proceedings.

[5] The Defendant takes issue with the amount of time Carrington spent with her. For example, at the evidentiary hearing she introduced a Pinellas County Jail sheet showing Carrington and his associate (Pi) logged six visits to the Defendant between December 14, 2009, and April 4, 2010 (ex. 2). Admittedly, several visits were relatively brief (ten to twenty minutes); yet, one was lengthy (over an hour). And this record only shows the time Carrington logged at the Pinellas County Jail. It does not show the time Carrington spent with the Defendant in the Marshal's lockup. Irrespective, a client's satisfaction with the quantity of time she spent with her lawyer is not the measure of counsel's effectiveness, and the Defendant during the Rule 11 proceeding confirmed her satisfaction with counsel's performance.

by 21 U.S.C. § 841(b)(1)(B)(ii) followed by the five-year, minimum-mandatory sentence required by 18 U.S.C. § 924(c)), is refuted by her statements at the Rule 11 proceeding acknowledging her understanding of the range of penalties she faced, including the minimum-mandatory ones (*compare* doc. 187 at p. 3 with doc. 204 at pp. 24-27, 32-34).[6] The weight of the government's evidence, especially her prior history of transporting cash and cocaine for her son, left her without attractive options.[7]

*C. Conclusion*

After evaluating the "totality of the circumstances," it is hereby

**RECOMMENDED:**

1. Defendant's motion to withdraw her guilty plea (doc. 187) be **DENIED**.

IT IS SO REPORTED at Tampa, Florida on December 2, 2010.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[6] As a corollary to this argument, the Defendant contends that she did not know her advisory guideline score was less than the fifteen-year, minimum-mandatory sentence she faced. In other words, she now believes she should have gone to trial because she had nothing to lose. Frankly, I do not find her testimony credible. She affirmed at the Rule 11 proceeding that Carrington had discussed the application of the sentencing guidelines with her. And her change of heart assumes that the Court, had she gone to trial and been convicted, would be disinclined to depart upward or impose an upward variance from the fifteen-year sentence. Besides, it ignores other reasons for pleading guilty. For example, Carrington voiced the Defendant's concern that she was pleading "open" as she did not want to testify against her codefendant, presumably the feature of any proposed plea agreement (doc. 204 at p. 4). And, just as likely, she did not want the prospect of having her son be forced to testify against her (a potential feature of his plea agreement despite his stated refusal to do so; *see* doc. 49 at ¶9 and doc. 204 at pp. 6-7).

[7] Because the first two prongs of the *Buckles* test weigh against the Defendant, I need not "give particular attention" or weight to the last two factors. *United States v. Gonzalez-Mercado,* 808 F.2d at 801; s*ee also United States v. Smith,* 336 Fed. Appx. 978, 981 (11th Cir. 2009).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:   The Honorable Elizabeth A. Kovachevich
      Counsel of Record